# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

STATE OF RHODE ISLAND; STATE OF NEW YORK; STATE OF HAWAI'I; STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF ILLINOIS; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; PEOPLE OF THE STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF OREGON; STATE OF VERMONT; STATE OF WASHINGTON; STATE OF WISCONSIN; STATE OF ARIZONA,

*Plaintiffs-Appellees,*

*(caption continued on next page)*

On Appeal from the United States District Court
for the District of Rhode Island

## BRIEF OF LAW SCHOLARS *AMICI CURIAE*
## IN SUPPORT OF AFFIRMANCE OF THE DISTRICT COURT'S GRANT
## OF SUMMARY JUDGMENT TO PLAINTIFFS-APPELLEES AND
## RELATED RELIEF

Susannah Landes Weaver
ENVOLVE LAW
5100 Wisconsin Ave. NW, Suite 306
Washington, DC 20016
(202) 556-7898

Jonas Monast
Patrick R. Jacobi
Alexandra L. St. Romain
CENTER FOR APPLIED ENVIRONMENTAL
 LAW AND POLICY
712 H Street NE, Suite 90006
Washington, DC 20002
(703) 405-8950
patrick.jacobi@caelp.org

*Counsel for Law Scholars* Amici Curiae

v.

DONALD J. TRUMP, in the official capacity as President of the United States; MINORITY BUSINESS DEVELOPMENT AGENCY; JOYCE MEYER, in the official capacity as Under Secretary of Commerce for Economic Affairs performing the non-exclusive functions and duties of the Under Secretary of Commerce for Minority Business Development; HOWARD W. LUTNICK, in the official capacity as Secretary of Commerce; FEDERAL MEDIATION AND CONCILIATION SERVICE; ANNA DAVIS, in the official capacity as General Counsel performing the duties of the Director of the Federal Mediation and Conciliation Service; RUSSELL THURLOW VOUGHT, in the official capacity as Director of the Office of Management and Budget; U.S. OFFICE OF MANAGEMENT AND BUDGET; KENNETH JACKSON, in the official capacity as Acting Executive Director of the U.S. Interagency Council on Homelessness; U.S. INTERAGENCY COUNCIL ON HOMELESSNESS,

*Defendants-Appellants*,

INSTITUTE OF MUSEUM AND LIBRARY SERVICES; LISA SOLOMSON, in the official capacity as Senior Official Performing Duties of Director of the Institute of Museum and Library Services,

*Defendant.*

# RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, counsel for Law Scholars *Amici Curiae* states that no party to this brief is a publicly held corporation, issues stock, or has a parent corporation.

Dated:  May 8, 2026

*/s/ Patrick R. Jacobi*
Patrick R. Jacobi

# TABLE OF CONTENTS

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ..................................... iii

TABLE OF CONTENTS .................................................................. iv

TABLE OF AUTHORITIES ................................................................v

INTEREST OF *AMICI CURIAE* ..................................................... 1

ARGUMENT ..............................................................................2

I.   The Unitary-Executive-Removal Cases Do Not Authorize the President to Ignore, Rewrite, or Violate Statutes. .............................................7

II.  Even Where the President Directs Agency Action Through a Chain of Dependence, Executive Agencies Must Act Within the Bounds of Congressionally Delegated Authority. ........................................ 11

III. This Court Should Affirm the District Court's Grant of Summary Judgment and Related Relief to Plaintiffs-Appellees and Recognize Congress's Central Role in Empowering and Constraining the President and His Subordinates Alike. ............................................................................. 20

CONCLUSION ...........................................................................23

CERTIFICATE OF COMPLIANCE ....................................................24

CERTIFICATE OF SERVICE ..........................................................25

# TABLE OF AUTHORITIES

**Cases**

*Addison v. Holly Hill Fruit Prods., Inc.,*
    322 U.S. 607 (1944)........................................................................13

*Biden v. Nebraska,*
    600 U.S. 477 (2023)...........................................................14, 16, 21

*Biden v. Texas,*
    597 U.S. 785 (2022)........................................................................15

*Bldg. & Constr. Trades Dep't v. Allbaugh,*
    295 F.3d 28 (D.C. Cir. 2002) .......................................................9, 10

*Chamber of Com. v. Reich,*
    74 F.3d 1322 (D.C. Cir. 1996) .......................................................15

*City of Arlington v. FCC,*
    569 U.S. 290 (2013)........................................................................14

*Clinton v. City of New York,*
    524 U.S. 417 (1998)........................................................................10

*Clinton v. Jones,*
    520 U.S. 681 (1997)........................................................................21

*Collins v. Yellen,*
    594 U.S. 220 (2021)..........................................................................8

*Dalton v. Specter,*
    511 U.S. 462 (1994)........................................................................20

*Dep't of Com. v. New York,*
    588 U.S. 752 (2019)........................................................................16

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*
    591 U.S. 1 (2020)............................................................................16

*FCC v. Consumers' Research,*
606 U.S. 656 (2025).........................................................10, 18, 19

*FDA v. Brown & Williamson Tobacco Corp.,*
529 U.S. 120 (2000).....................................................................19

*FDA v. Wages & White Lion Invs., LLC,*
604 U.S. 542 (2025).....................................................................16

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
561 U.S. 477 (2010)....................................................................8, 9

*INS v. Chadha,*
462 U.S. 919 (1983).....................................................................10

*In re Aiken Cnty.,*
725 F.3d 255 (D.C. Cir. 2013) .....................................................3, 7

*Indus. Union Dep't, AFL CIO v. Am. Petroleum Inst.,*
448 U.S. 607 (1980).....................................................................12

*Kendall v. United States ex rel. Stokes,*
37 U.S. 524 (1838)......................................................................22

*Kennedy v. Braidwood Mgmt.,*
606 U.S. 748 (2025).....................................................................14

*Larson v. Domestic & Foreign Com. Corp.,*
337 U.S. 682 (1949).....................................................................10

*Learning Resources, Inc. v. Trump,*
224 L. Ed. 2d 51 (2026)...........................................................16, 18

*Loper Bright Enters. v. Raimondo,*
603 U.S. 369 (2024)......................... 5, 7, 10, 13, 14, 15, 20,

*Marbury v. Madison,*
5 U.S. 137 (1 Cranch) (1803) ...............................................3, 7, 8, 12

*Marshall Field & Co. v. Clark*,
143 U.S. 649 (1892)......................................................................17

*Mistretta v. United States*,
488 U.S. 361 (1989)...................................................................6, 19

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983).......................................................................15

*Mugler v. Kansas*,
123 U.S. 623 (1887).....................................................................12

*Nebraska v. Su*,
121 F.4th 1 (9th Cir.)...................................................................15

*Ohio v. EPA*,
603 U.S. 279 (2024).....................................................................16

*Seila L., LLC v. Consumer Fin. Prot. Bureau*,
591 U.S. 197 (2020)............................................................7, 8, 9, 11

*Trump v. Am. Fed. of Gov't Emps.*,
145 S. Ct. 2635 (2025).................................................................15

*Trump v. United States*,
603 U.S. 593 (2024)................................................................3, 6, 21

*United States v. Arthrex, Inc.*,
594 U.S. 1 (2021).......................................................................8, 9

*United States v. Lee*,
106 U.S. 196 (1882).....................................................................21

*United States v. Lee Yen Tai*,
185 U.S. 213 (1902).....................................................................12

*United States v. Midwest Oil Co.*,
236 U.S. 459 (1915).....................................................................12

*Util. Air Regul. Grp. v. EPA,*
     573 U.S. 302 (2014)......................................................................14

*West Virginia v. EPA,*
     597 U.S. 697 (2022)..................................................14, 16, 17, 20

*Work v. United States,*
     267 U.S. 175 (1925)......................................................................13

*Youngstown Sheet & Tube Co. v. Sawyer,*
     343 U.S. 579 (1952) ...............................................6, 10, 11, 21, 22

**Constitutional Provisions**

U.S. Const. art. II, § 1, cl. 1 .............................................................7

U.S. Const. art. II, § 3 .......................................................................7

**Statutes**

5 U.S.C. § 706(1)–(2).......................................................................13

**Executive Branch Materials**

U.S. Dep't of Just., Attorney General's Manual on the Administrative Procedure
     Act (1947) ..............................................................................13

**Other Authorities**

Jodi L. Short & Jed H. Shugerman, *Major Questions About Presidentialism:*
     *Untangling the "Chain of Dependence" Across Administrative Law,*
     65 B.C. L. Rev. 511 (2024)...........................................................17

# INTEREST OF *AMICI CURIAE*[1]

Law Scholars *Amici Curiae* are law professors who teach and write in the fields of constitutional and administrative law. *Amicus* William W. Buzbee is the Edward and Carole Walter Professor of Law at Georgetown University Law Center. *Amicus* Noah Rosenblum is an Associate Professor of Law at New York University School of Law. *Amicus* Jodi Short is the Mary Kay Kane Distinguished Professor of Law at University of California College of Law, San Francisco.

Law Scholars *Amici Curiae* have a strong interest in the sound development of constitutional and administrative law in the federal courts. They submit this brief because of the important separation-of-powers issues implicated by the Trump Administration's attempts to unilaterally dismantle congressionally created agencies, including three at issue in this case: the Federal Mediation and Conciliation Service ("FMCS"), the United States Interagency Council on Homelessness ("USICH"), and the Minority Business Development Agency ("MBDA"). As leading constitutional- and administrative-law scholars, Law Scholars *Amici Curiae* are well-positioned to provide insights that may assist the

---

[1] Counsel for Law Scholars *Amici Curiae* certifies that the parties in this proceeding have been consulted and consent to the timely filing of this brief. Pursuant to Fed. R. App. P. 29(a)(4), counsel for Law Scholars *Amici Curiae* states that no party or party's counsel authored this brief in whole or in part, and that no other person besides Law Scholars *Amici Curiae* or their counsel contributed money intended to fund the preparation or submission of this brief.

Court in evaluating the parties' arguments concerning separation-of-power

principles.

**ARGUMENT**

This case requires this Court to determine the proper relationship between

Congress and the Executive Branch:  namely, whether the Executive Branch can

unilaterally eliminate congressionally created, authorized, and funded agencies

because a newly elected President disagrees with the agencies' mandates as set out

in statutes.  *See* A2 ("By now, the question presented in this case is a familiar one:

may the Executive Branch undertake such actions in circumvention of the will of

the Legislative Branch?").  Pursuant to an executive order, the Administration

began dismantling the FMCS, USICH, and MBDA "by withholding already

appropriated federal funding from these agencies, terminating numerous grants and

programs that these agencies administer, and placing many of the agencies'

employees on administrative leave." A3.  These actions "in furtherance of the

[executive order]'s mandates" left "the agencies unable to carry out their statutorily

mandated functions." A6.  In court, the Administration largely seeks to evade

review and otherwise relies on the executive order to justify its actions, which, it

contends, are also committed to the executive agencies' unreviewable discretion.

Brief of Defendants-Appellants, Doc. 00118428951, at 13–39; *see also* A24

(observing that, "[i]n undertaking these actions, some of the agencies even cited to

the" executive order).  As this brief will explain, carrying out the President's policy preference does not insulate Executive Branch action from compliance with statutes and judicial review, even when undertaken in service of the elected President's goals through his politically accountable appointees.

The Administration's position here reflects its larger attempt to disrupt the judiciary's duty to "say what the law is."  *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).  But when, as here, the power at issue derives from delegation in congressionally enacted statutes rather than a "conclusive and preclusive" constitutional authority of the President, *Trump v. United States*, 603 U.S. 593, 607 (2024) (citation omitted), courts must ensure that the entire Executive Branch complies with those statutes, regardless of the action under review, *see In re Aiken Cnty.*, 725 F.3d 255, 259 (D.C. Cir. 2013) (rejecting argument that the Executive Branch can disregard congressional commands based on mere policy preference).  This brief explains why this conclusion follows from two bodies of the Supreme Court's separation-of-powers jurisprudence:  one enhancing presidential removal power to ensure requisite political accountability under Article II of the Constitution, and another that demands review of executive-agency actions to protect Congress's Article I power.

In a series of cases relying on aspects of the "unitary-executive theory" to extend the President's authority to remove certain agency leadership and direct

agency legal positions, the Supreme Court has proclaimed the President the most democratically accountable government official and has stressed the practical and legal importance of a "chain of dependence" between the President and leadership in the Executive Branch. That "chain of dependence," the Court has explained, provides political accountability and democratic legitimacy to Executive Branch actions. Although the Administration does not expressly invoke the unitary-executive theory here, these concepts undergird the Administration's attempts to evade review and carry out the President's policy preference to eliminate three agencies.

In a separate set of cases, the Supreme Court has invalidated executive-agency actions carrying out presidential directives where the Court deems those actions to exceed a limited delegation of authority or to lack statutory authorization altogether based on a constitutional imperative to protect the authority vested in a democratically elected Congress. The political accountability of the Executive Branch is not controlling in these cases. Indeed, the invalidated actions were often duly taken at the direction of the politically accountable President by his appointed and confirmed agency secretary or administrator, through the same "chain of dependence" that is central to the unitary-executive-removal cases. Yet the Court deemed the agencies to have exceeded the authority that Congress delegated.

This case presents an opportunity for this Court to protect the rule of law through the separation of powers and clarify how these two lines of cases interact. The Administration's overall approach seems to suggest that the President's political accountability justifies his authority to remove Executive Branch officials *and* insulates agency action taken at his direction from judicial review. This approach runs contrary to well-established administrative-law doctrine, as well as more recent separation-of-powers jurisprudence applying the major-questions doctrine to agency actions taken at the direction of the President.

Indeed, the Administration's approach highlights the potential paradox in these two lines of cases. It cannot be true that: (a) courts cannot review actions of agency leadership that violate statutes or act outside the bounds of discretionary authority because they are acting via a chain of dependence to the President, the most democratically accountable government actor; *and* (b) courts must review those same executive agencies acting at the President's direction to ensure compliance with congressional commands. In other words, the Administration's actions stemming from a now-enhanced ability to control the identity of agency leadership cannot be reconciled with—nor exempted from—the Supreme Court's command that reviewing courts ensure that executive-agency actions be limited to the bounds of Congress's statutorily delegated authority. *See generally Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). If not reined in, the

5

Administration's approach threatens to subvert separation-of-powers principles embedded in the Constitution. *See Mistretta v. United States*, 488 U.S. 361, 380 (1989) ("[T]he separation of governmental powers into three coordinate Branches is essential to the preservation of liberty."); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 629 (1952) (Douglas, J., concurring) ("The doctrine of the separation of powers was adopted . . . to preclude the exercise of arbitrary power. The purpose was . . . to save the people from autocracy." (citation omitted)).

Reading these two bodies of cases together leads to two straightforward conclusions. First, a president's political accountability, as the head of the Executive Branch, may allow him to remove personnel or even provide him an opportunity to control an agency's legal position, but it cannot preclude or constrain judicial review of that action for compliance with substantive statutory standards or requirements that define the scope of the Executive Branch's delegated authority. Second, a president's directive authority in overseeing the execution of statutes is not a license to exceed the discretionary authority that Congress provided or otherwise to contradict the will of Congress. Courts should align the standard of review of all executive-agency exercises of statutorily delegated authority that are not within a President's specifically identified "conclusive and preclusive" constitutional authority, *Trump*, 603 U.S. at 607 (citation omitted), regardless of whether they are directed by the politically

6

accountable President.  In every case, courts should "say what the law is," *Marbury*, 5 U.S. at 177, under the "best reading" of the relevant statutes, *Loper Bright Enters*, 603 U.S. at 395.

I.    **The Unitary-Executive-Removal Cases Do Not Authorize the President to Ignore, Rewrite, or Violate Statutes.**

Since 2010, the Supreme Court has issued a series of opinions that bolster the President's control over agency leadership and function by invalidating congressionally designed removal protections as unconstitutional.  Specifically, these cases rely on aspects of the unitary-executive theory, under which "the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila L., LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203 (2020) (quoting U.S. Const. art. II, § 1, cl. 1; *id.* § 3).  These cases recognize the President as "the most democratic and politically accountable official in Government" and require a "chain of dependence" between the President and the agencies that Congress charges with faithfully executing myriad laws. *Seila L.*, 591 U.S. at 224 (citation omitted).  But none of these cases, nor *Trump v. United States*, suggests that the President (or others in the Executive Branch) may act outside the bounds of—or contrary to—congressionally delegated authority as set out in statutes. *See Aiken Cnty.*, 725 F.3d at 259 (D.C. Cir. 2013) (Kavanaugh, J.) ("[T]he Executive must abide by statutory mandates and prohibitions.  Those basic constitutional principles apply to the President and

7

subordinate executive agencies."); *cf. Marbury*, 5 U.S. at 171 (concluding that the President may not lawfully forbid an executive officer from carrying out acts required by law).

The modern line of cases reflecting this unitary-executive vision centers on the need for presidential control over agency leadership through a chain of dependence, often exercised through at-will removal. *See, e.g.*, *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 483–84, 498 (2010) (concluding that the two-layer statutory scheme protecting the tenure of Public Company Accounting Oversight Board members unduly restricted the President's power to remove them); *Seila L.*, 591 U.S. at 218, 224–25 (striking down statutory removal protections for the Director of the Consumer Financial Protection Bureau ("CFPB"), an agency considered to be otherwise "independent" from executive control, because it would allow the director to wield "substantial executive power"); *Collins v. Yellen*, 594 U.S. 220, 226–28, 252 (2021) (deeming unlawful the statutory provision limiting the President to for-cause removal of the Federal Housing Finance Agency's single director).

In *United States v. Arthrex, Inc.*, the Court addressed the related question of the degree of presidential control over substantive agency decision-making that Article II demands. 594 U.S. 1 (2021). The Court held unlawful the structure of the Patent and Trial Appeal Board ("PTAB"), which had authority to make final,

binding decisions to invalidate previously issued patents in proceedings brought by private parties, because "the President can neither oversee the PTAB himself nor 'attribute the Board's failings to those whom he *can* oversee.'" *Id.* at 8–9, 17 (quoting *Free Enter. Fund*, 561 U.S. at 496).

All of these cases embrace the unitary-executive theory and conclude that a "chain of dependence" from agency leadership to the President ensures agencies' democratic accountability. Here, this theory provides the only possible explanation for the Administration's naked reliance on an executive order and invocation of purportedly unreviewable discretion to take actions that result in the elimination of three agencies. Yet, even as these cases expressly struck down provisions limiting presidential control over agency leadership removal, they neither questioned nor invalidated the validity of substantive statutory standards or requirements that define the scope of the Executive Branch's delegated authority. *See, e.g.*, *Seila L.*, 591 U.S. at 235 ("The provisions of the Dodd-Frank Act bearing on the CFPB's structure and duties remain fully operative without the offending tenure restriction."); *Free Enter. Fund*, 561 U.S. at 509 ("The Sarbanes-Oxley Act remains 'fully operative as a law' with these tenure restrictions excised." (citations omitted)). Accordingly, even if executive-agency officers are "duty-bound to give effect to the policies embodied in the President's direction," they may do so only "to the extent allowed by the law." *Bldg. & Constr. Trades Dep't v. Allbaugh*, 295

9

F.3d 28, 32 (D.C. Cir. 2002); *see also Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949) ("[W]here the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. . . . His actions are *ultra vires* his authority and therefore may be made the object of specific relief."). Because all delegated authority ultimately runs to the President, the terms of statutory delegations to agency officials constrain the President's actions as well as his subordinates. *See FCC v. Consumers' Research*, 606 U.S. 656, 705 (2025) (Kavanaugh, J., concurring) ("[T]he President generally must act within the confines set by Congress when he implements legislation. So the President's actions when implementing legislation *are* constrained—namely, by the scope of Congress's authorization and by any restrictions set forth in that statutory text." (citing *Loper Bright*, 603 U.S. at 394–96, 404)).

It thus remains the case that "the President's power [under Article II, § 3] to see that the laws are faithfully executed refutes the idea that he is to be a lawmaker." *Allbaugh*, 295 F.3d at 32 (quoting *Youngstown*, 343 U.S. at 587 (alteration in *Allbaugh*)). Statutes are products of Congress's Article I power, and they cannot be revised or rescinded outside the strictures of Article I. *See Clinton v. City of New York*, 524 U.S. 417, 438 (1998) ("There is no provision in the Constitution that authorizes the President to enact, to amend, or to repeal statutes."); *INS v. Chadha*, 462 U.S. 919, 953–54 n.16 (1983) (concluding that

10

executive action undertaken pursuant to "legislatively delegated authority" "is always subject to check by the terms of the legislation that authorized it; and if that authority is exceeded it is open to judicial review"). Under the Court's unitary-executive-removal cases, presidents therefore can select and oversee executive-agency leadership, but agencies remain duty-bound not to unilaterally ignore, rewrite, or violate statutes. *See Seila L.*, 591 U.S. at 268 (Kagan, J., joined by Ginsburg, Breyer, and Sotomayor, JJ., concurring in judgment in part and dissenting in part) ("[T]he Take Care Clause requires only enough authority to make sure the laws are faithfully executed—meaning with fidelity to the law itself, not to every presidential policy preference." (cleaned up) (citation omitted)).

## II. Even Where the President Directs Agency Action Through a Chain of Dependence, Executive Agencies Must Act Within the Bounds of Congressionally Delegated Authority.

The Administration's reliance on Executive Branch policy preferences set out in an executive order cannot excuse elimination of three congressionally created agencies. The Constitution envisions the Executive Branch as a constrained institutional actor. The President's involvement in the legislative process does not extend beyond the moment of statutory enactment. *See, e.g., Youngstown*, 343 U.S. at 587 ("The Constitution limits [the President's] functions in the lawmaking process to the recommending of laws he thinks wise and the vetoing of laws he thinks bad."). The Constitution "does not confer upon [the

11

President] any power to enact laws or to suspend or repeal such [laws] as the Congress enacts." *United States v. Midwest Oil Co.*, 236 U.S. 459, 505 (1915) (citation omitted). After all, "[a] statute enacted by Congress expresses the will of the people of the United States in the most solemn form." *United States v. Lee Yen Tai*, 185 U.S. 213, 222 (1902); *see also Indus. Union Dep't, AFL CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 685, (1980) (Rehnquist, J., concurring in the judgment) ("[Congress] is the branch of our Government most responsive to the popular will.").

The Supreme Court first recognized that constitutional structure demands judicial review of Executive Branch actions for fidelity to congressionally delegated authority in *Marbury v. Madison*. *See* 5 U.S. at 163 (concluding that the United States is "a government of laws, and not of men" but would "certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right," which is "the very essence of civil liberty"). Even the President must not exceed the law's bounds. *See id.* at 171 (concluding that "the President cannot lawfully forbid" a congressional command).

From the end of the nineteenth century into the twentieth century, the Supreme Court repeatedly confirmed *Marbury*'s command. *See, e.g., Mugler v. Kansas*, 123 U.S. 623, 661 (1887) ("'To what purpose,' it was said in *Marbury v. Madison*, 1 Cranch, 137, 176, 'are powers limited, and to what purpose is that

limitation committed to writing, if these limits may, at any time, be passed by those

intended to be restrained?'"); *Work v. United States*, 267 U.S. 175, 177 (1925)

(concluding that a federal officer may be assigned a "duty [that] may be

discretionary within limits" but "can not [*sic*] transgress those limits, and if he does

so, he may be controlled by injunction or mandamus to keep within them");

*Addison v. Holly Hill Fruit Prods., Inc.*, 322 U.S. 607, 616 (1944) ("The

determination of the extent of authority given to a delegated agency by Congress is

not left for the decision of him in whom authority is vested.").  Congress codified

this well-established principle in the Administrative Procedure Act ("APA") in

1946.[2]  Specifically, Executive Branch agencies may not "unlawfully with[o]ld or

unreasonably delay[]" agency action and may not act in a manner that is "(A)

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in

excess of statutory jurisdiction, authority, or limitations."  5 U.S.C. § 706(1)–(2).

Today, there should be no question that, even if the President is directing

agency action through a chain of dependence, executive agencies must operate

---

[2] *See Loper Bright*, 603 U.S. at 391–92 ("The APA thus codifies for agency cases
the unremarkable, yet elemental proposition reflected by judicial practice dating
back to *Marbury*:  that courts decide legal questions by applying their own
judgment."); U.S. Dep't of Just., Attorney General's Manual on the Administrative
Procedure Act 93 (1947) (describing the APA as "a general restatement of the
principles of judicial review embodied in many statutes and judicial decisions").

within the statutory bounds "authoritatively prescribed by Congress." *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013). In *Utility Air Regulatory Group v. EPA*, Justice Scalia instructed that "an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate" and that the presidency "does not include a power to revise clear statutory terms that turn out not to work in practice." 573 U.S. 302, 327–28 (2014) (citation omitted). The Supreme Court embraced the same point eight years later, concluding that agencies "have only those powers given to them by Congress" and that enabling acts are not an "open book" subject to agency additions. *West Virginia v. EPA*, 597 U.S. 697, 723 (2022) (citation omitted). The Court reiterated a year later that agencies may neither rewrite a statute "from the ground up" nor seize "the power of the Legislature." *Biden v. Nebraska*, 600 U.S. 477, 494, 503 (2023). Even as it rejected the notion of deference to agency interpretations of ambiguous statutory provisions, the Court in 2024 clarified the judicial role as "fixing the boundaries of the delegated authority, and ensuring the agency has engaged in 'reasoned decisionmaking' within those boundaries." *Loper Bright*, 603 U.S. at 395 (citations omitted). And in 2025, the Court concluded that the Reorganization Act of 1949 "barred *the President* from seizing on a reorganization plan to unilaterally confer new powers on an agency" because only Congress could confer such authority. *Kennedy v. Braidwood Mgmt.*, 606 U.S. 748, 790 (2025). These foundational principles

14

transcend the divisions ascribed to Justices based on the political affiliation of the President who appointed them. *See, e.g.*, *Trump v. Am. Fed. of Gov't Emps.*, 145 S. Ct. 2635, 2642 (2025) (Jackson, J., dissenting) ("While the President no doubt has the authority to manage the Executive Branch, our system does not allow the President to rewrite laws on his own under the guise of that authority."). Unsurprisingly, the "Supreme Court has never excepted a final rule from APA review because it carried out a presidential directive." *Nebraska v. Su*, 121 F.4th 1, 15 (9th Cir. 2024).[3]

If mere presidential direction of agency action were a valid basis on which to uphold an executive-agency action, there would no longer be any need to satisfy the requirements of reasoned decision-making articulated in *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 52. Indeed, recent Supreme Court decisions demonstrate the opposite. The Court has bolstered this standard as a requirement for agency action. *Loper Bright*, 603 U.S. at 395. The Court has

---

[3] *See also Biden v. Texas*, 597 U.S. 785, 793, 807–14 (2022) (holding that agency memoranda issued pursuant to an executive order constituted final agency action under the APA and directing the district court to "consider . . . whether the [memoranda] comply with section 706 of the APA" (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 46–57 (1983)); *Chamber of Com. of the U.S. v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996) ("[T]hat the [agency]'s regulations are based on the President's Executive Order hardly seems to insulate them from judicial review under the APA, even if the validity of the Order were thereby drawn into question." (citation omitted)).

also reiterated the necessary characteristics of reasoned decision-making, including a contemporaneous agency explanation that: (1) avoids reliance on pretextual factors, *Dep't of Com. v. New York*, 588 U.S. 752, 782–85 (2019); (2) considers alternatives and reliance interests, *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 33 (2020); and (3) adequately responds to received comments, *Ohio v. EPA*, 603 U.S. 279, 297 (2024). And while "agencies are free to change their existing policies," they must "provide a reasoned explanation for the change, display awareness that they are changing position, and consider serious reliance interests." *FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 568 (2025) (citations and quotations marks omitted). Executive Branch policy preference cannot overcome these foundational requirements.

Moreover, if presidential direction were a valid basis on which to uphold an executive-agency action, recent Supreme Court cases would have had different outcomes. Specifically, the Court's major-questions-doctrine cases have largely invalidated challenged actions as beyond the bounds of the discretionary authority delegated to executive agencies *despite* the President's exertion of significant control over the agencies in developing those actions. *See generally, e.g., Learning Resources, Inc. v. Trump*, 224 L. Ed. 2d 51 (2026) (invalidating President Trump's global tariffs); *Biden v. Nebraska*, 600 U.S. 477 (2023) (invalidating the Secretary of Education's student-loan-forgiveness program); *West Virginia v. EPA*, 597 U.S.

16

697 (2022) (striking down the Environmental Protection Agency's Clean Power Plan).[4]

Justices in those cases deemed the challenged actions to have exceeded delegated statutory authority in part by framing the major-questions doctrine as protective of the Constitution's vesting of all legislative power in Congress against "a regime administered by a ruling class of largely unaccountable 'ministers.'" *West Virginia*, 597 U.S. at 737 (Gorsuch, J., joined by Alito, J., concurring) (citation omitted); *see also, e.g., id.* at 737 ("[T]he Constitution's rule vesting federal legislative power in Congress is 'vital to the integrity and maintenance of the system of government ordained by the Constitution.'" (quoting *Marshall Field & Co. v. Clark*, 143 U.S. 649, 692 (1892))). Yet abundant administrative and political records demonstrated that Presidents had directed the executive agencies to adopt each of the policies in question. *See* Jodi L. Short & Jed H. Shugerman, *Major Questions About Presidentialism: Untangling the "Chain of Dependence" Across Administrative Law*, 65 B.C. L. Rev. 511, 533–74 (2024) (rigorously detailing the role Presidents played in directing the policies invalidated under the

---

[4] As set out in 2022, the major-questions doctrine may apply in "extraordinary cases . . . in which the history and the breadth of the authority that the agency has asserted, and the economic and political significance of that assertion, provide a reason to hesitate before concluding that Congress meant to confer" sufficient authority for the challenged regulation, absent "clear congressional authorization." *West Virginia*, 597 U.S. at 721, 723 (citations omitted) (cleaned up).

major-questions doctrine before 2025 and how, with the exception of some dissenting opinions, Justices have largely ignored the President's role in directing the challenged regulations).[5]  The Court's most recent application of the major-questions doctrine even rejects *the President's* invocation of his—purportedly unreviewable—emergency and foreign affairs powers as a license to exceed the bounds of statutorily delegated authority.  *Learning Resources*, 224 L. Ed. 2d at 66–67.  A Court majority in *Learning Resources* further emphasized that presidents may not bypass statutory "procedural prerequisites" even when invoking broad powers related to foreign affairs.  *See id.* at 69 & n.4 (concluding that the President lacked claimed tariff powers in part due to how other statutes' "pattern of usage" pairs tariff-power assertion with demanding "procedural prerequisites" and "careful constraints").[6]  Once again, the Court did not give these actions a pass due to presidential involvement, insisting instead that the action be statutorily

---

[5] Justice Kavanaugh's concurrence in *FCC v. Consumers' Research* lends support to Professors Short and Shugerman's argument:  "Critiques of broad congressional delegations sometimes focus on officials described as 'unaccountable bureaucrats.' But that label does not squarely fit delegations to *executive* agencies.  In those circumstances, the President and his subordinate executive officials maintain control over the executive actions undertaken pursuant to a delegation."  606 U.S. at 707.

[6] Chief Justice Roberts, joined by Justices Gorsuch and Barrett, further developed this point in their major-questions-doctrine application, *id.* at 64, as did Justice Kagan, joined by Justices Sotomayor and Jackson, concurring in the result but not the need for wielding the major-questions doctrine, *id.* at 106.

authorized. The upshot is that these cases demonstrate that the Executive Branch may not act contrary to or exceed its statutorily delegated authority, even when the President directs executive-agency action through the chain of dependence, and that courts must police the Executive Branch's compliance with statutory law.

As matter of constitutional and administrative law, therefore, the President's role in directing agencies is not a license for the Executive Branch to undertake actions outside of statutorily delegated authority, including actions that violate a statutory mandate or prohibition. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 161 (2000) ("No matter how important, conspicuous, and controversial the issue, and regardless of how likely the public is to hold the Executive Branch politically accountable, an administrative agency's power to regulate in the public interest must always be grounded in a valid grant of authority from Congress." (cleaned up)). Allowing the Executive Branch to contravene or exceed the authority that Congress delegated in a statute would also undermine the "purpose of the nondelegation doctrine," which "is to enforce limits on the 'degree of policy judgment that can be left to those executing or applying the law.'" *Consumers' Research*, 606 U.S at 680 (quoting *Mistretta*, 488 U.S. at 416 (Scalia, J., dissenting)). Without these limits, "[l]egislation would risk becoming nothing more than the will of the current President[,]" and "[i]ntrusions on liberty would

19

not be difficult and rare, but easy and profuse." *West Virginia*, 597 U.S. at 739

(Gorsuch, J., joined by Alito, J., concurring).

**III. This Court Should Affirm the District Court's Grant of Summary Judgment and Related Relief to Plaintiffs-Appellees and Recognize Congress's Central Role in Empowering and Constraining the President and His Subordinates Alike.**

It is critical that this Court and other courts resolve the separation-of-powers

question presented here in a straightforward manner: By reinforcing that, when the

Executive Branch is exercising power conveyed by Congress in a statute, the *entire*

Executive Branch must act within the bounds of—and consistent with—its

constitutional and statutorily delegated authority. It follows from this approach

that, here, the Executive Branch has no power to unilaterally eliminate three

congressionally created agencies. Statutes brought the three agencies into being,

established their priorities, and mandate that the programs continue through grants

of appropriated funding. *See* Brief for Plaintiffs-Appellees, Doc. 00118442839, at

5–9 (summarizing the creation of the three agencies and recent appropriations).

Reaching this conclusion will reinforce bedrock separation-of-powers and

administrative-law principles. Congress may delegate discretionary authority

directly to the President in a statute. *See, e.g.*, *Dalton v. Specter*, 511 U.S. 462,

473–76 (1994) (discussing the scope of authority statutorily delegated to the

President). Or Congress may delegate discretion to an Executive Branch agency.

*See Loper Bright*, 603 U.S. at 394 ("In a case involving an agency, of course, the

20

statute's meaning may well be that the agency is authorized to exercise a degree of discretion.").  In each instance, a statute prescribes the limits of the delegated authority.  And, in each instance, courts must hold the relevant actor in the Executive Branch to those limits.

This is consistent with the Supreme Court's recent clarification that, while a president's reliance on "his exclusive constitutional power" may render an action unreviewable, "[i]f the President claims authority to act but in fact exercises mere 'individual will' and 'authority without law,' the courts may say so."  *Trump*, 603 U.S. at 608 (quoting *Youngstown,* 343 U.S. at 655 (Jackson, J., concurring)).  In such instances, all government officers, "from the highest to the lowest, are creatures of the law and are bound to obey it."  *United States v. Lee*, 106 U.S. 196, 220 (1882); *see also Clinton v. Jones*, 520 U.S. 681, 703 (1997) ("[W]e have long held that when the President takes official action, the Court has the authority to determine whether he has acted within the law.").

These principles apply regardless of whether the Executive Branch is exercising congressionally delegated authority to spend, regulate, or take other action.  *See Nebraska*, 600 U.S. at 504–06 (rejecting distinctions in executive power based on the type of congressionally conferred authority being exercised and cautioning that it "would be odd to think that separation of powers concerns evaporate simply because the Government is providing monetary benefits rather

than imposing obligations"). No authority provides a president directing agency action with a blank check to ignore congressional mandates, especially not vague, undefined, and unbounded notions of presidential or Executive Branch authority to implement policy preferences that conflict with statutory authority. *See* Brief for Plaintiffs-Appellees, Doc. 00118442839, at 36–40 (explaining why the Administration's dismantling actions are not committed to agency discretion).

Accordingly, Article II of the Constitution does not allow the President (or an agency) to unilaterally override Congress's choices. To hold otherwise would be to "assert[] a principle which, if carried out in its results to all cases falling within it, would be clothing the President with a power to control the legislation of congress [*sic*]," *Kendall v. United States ex rel. Stokes*, 37 U.S. 524, 613 (1838), rendering Congress a secondary branch with a mere advisory role, *cf. Youngstown*, 343 U.S. at 587 ("[T]he President's power to see that the laws are faithfully executed refutes the idea that he is to be a lawmaker."). Further, an expansion of executive power to include the power to defy the will of Congress "would be expanding Article II of the Constitution and rewriting it to suit . . . political conveniences," which would erode the separation of powers underpinning the Constitution. *Id.* at 632 (Douglas, J., concurring); *see also id.* at 655 (Jackson, J., concurring) ("With all its defects, delays and inconveniences, men have discovered

no technique for long preserving free government except that the Executive be under the law.").

## CONCLUSION

For the reasons stated above and in the in the Appellees' Brief, this Court should affirm the U.S. District Court for the District of Rhode Island's grant of summary judgment and related relief to Plaintiffs-Appellees.  This Court should further conclude that, when the Executive Branch is exercising power conveyed by Congress in a statute, the entire Executive Branch must act within the bounds of—and consistent with—that delegated authority.

Dated:  May 8, 2026

Susannah Landes Weaver
ENVOLVE LAW
5100 Wisconsin Ave. NW, Suite 306
Washington, DC 20016
(202) 556-7898

Respectfully submitted,

*/s/ Patrick R. Jacobi*
Jonas Monast
Patrick R. Jacobi
Alexandra L. St. Romain
CENTER FOR APPLIED
   ENVIRONMENTAL LAW AND POLICY
712 H Street NE, Suite 90006
Washington, DC 20002
(703) 405-8950
patrick.jacobi@caelp.org

*Counsel for Law Scholars* Amici
Curiae

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitations set forth in Fed. R. App. P. 29(a)(5) because this brief contains 5358 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), and which is less than one-half the length set for a party's principle brief in Fed. R. App. 32(a)((7)(B)(i).  The foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.


Dated:  May 8, 2026                                          */s/ Patrick R. Jacobi*
                                                              Patrick R. Jacobi

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 8th day of May, 2026, I caused the foregoing Brief of Law Scholars *Amici Curiae* in Support of Affirmance of the District Court's Grant of Summary Judgment for Plaintiffs-Appellees and Related Relief to be electronically filed with the Clerk of the Court for the U.S. Court of Appeals for the First Circuit using the Court's CM/ECF system, which constitutes service on all parties and parties' counsel who are registered ECF filers.

*/s/ Patrick R. Jacobi*
Patrick R. Jacobi